COLUMBIA–GREENE MEDICAL
CENTER, INC., Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary,
United States Department of Health
and Human Services, and Gail R. Wil-
ensky, Administrator, Health Care Fi-
nancing Administration, United States
Department of Health and Human Ser-
vices, Defendants.

No. 88–CV–914.

United States District Court,
N.D. New York.

March 1, 1991.

Roland, Fogel, Koblenz & Carr, Albany,
N.Y. (Mark L. Koblenz, Murray S. Carr, of
counsel), Mintz, Levin, Cohn, Ferris, Glov-
sky & Popeo, Boston, Mass. (Ellen L. Ja-
nos, of counsel), for plaintiff.

Frederick J. Scullin, Jr., U.S. Atty., Alba-
ny, N.Y. (Bernard J. Malone, Asst. U.S.
Atty., of counsel), for defendants.

Department of Health & Human Servic-
es, Baltimore, Md. (Marcus H. Christ, Ger-
ard Keating, of counsel), for Dept. of
Health and Human Services.

CHOLAKIS, District Judge.[1]

This case involves a challenge to one
aspect of the Medicare hospital reimburse-
ment scheme. Plaintiff alleges that the
portion of the regulatory scheme which
characterizes hospitals as "urban" or "ru-
ral" for purposes of reimbursement under
the Prospective Payment System, or PPS,
violates the statute under which the regula-
tions were promulgated, is arbitrary and
capricious and, as applied to plaintiff, vio-
lates the Due Process Clause of the 5th
Amendment. Plaintiff challenges its level
of reimbursement for 1986 only. Presently

---

1. The transcript of this opinion, delivered orally
from the bench, has been edited for punctua-
tion, grammatical construction, organization of
quotations and augmentation of citations.

before the Court are cross-motions for summary judgment.

Plaintiff essentially challenges the Secretary's use of Metropolitan Statistical Areas, or MSAs, as a basis for the "rural/urban" determination. MSAs are statistical standards derived from Bureau of Census data to show demographic and commuter patterns, delineated by county boundaries. The use of MSAs in the determination of whether a hospital is "urban" or "rural" under the PPS program is specifically called for by the relevant statute.

Notwithstanding the statutory authorization, or mandate, that MSAs be used for purposes of Medicare reimbursement, plaintiff argues that the regulations implementing the statute bear no rational relationship to Congress' intent that the PPS system reflect economic realities facing all hospitals. This Court finds such argument unpersuasive. Where Congress has directly spoken to the precise question at issue, the Court must give effect to the unambiguously expressed intent of Congress. Congress has clearly spoken on this issue.

First, Congress need not have provided that MSAs would be used in the urban/rural determination. Congress could have instead directed the Secretary to create his own basis by which to make such determination. Second, it is instructive that Congress did specify the use of MSAs, especially when considering that the purpose of the creation of the PPS, including the use of Diagnostic Related Groups, or DRGs, was to provide for more efficient and cost-effective delivery of health care services.

■ This Court therefore rejects plaintiff's contention that the Secretary somehow violated the controlling statute by promulgating regulations that called for the use of MSAs in the urban/rural determination. The statute is clear, and the Secretary merely implemented the specific congressional directives.

Plaintiff further argues that the Secretary was duty-bound to create an alternative to the MSA-based system. First, plaintiff argues that the inadequacy of the MSA-based system was made apparent to the Secretary in comments made during the notice-and-comment process prior to the adoption of the MSA-based regulations, as well as by the Prospective Payment Assessment Commission. Plaintiff argues that such awareness mandated that, to give effect to Congress' intent that the reimbursement scheme accurately reflect the economic realities in the provision of health care, the Secretary exercise its discretion to create an alternative system.

Plaintiff apparently bases its argument that the Secretary had the power and the duty to create an alternative to the MSA-based system by reference to two statutory provisions. First, plaintiff cites 42 U.S.C. § 1395ww(d)(2)(D), which states "the term 'urban area' means an area within a [MSA] ... *or within such similar area as the Secretary has recognized under subsection (a) by regulation.*" (emphasis added). As defendant points out, however, this is not a general grant of discretion to ignore the statutory reference to MSAs and create some other scheme. Instead, the section specifically refers to "similar areas" as the Secretary has recognized under § 1395ww(a).

According to defendant, the "similar area" to which the statute refers is a New England County Metropolitan Area, or NECMA, which was recognized by regulation as an urban area separate from MSAs under § 1395ww(a). This section, known as the Tax Equity and Fiscal Responsibility Act of 1982, or TEFRA, was the reimbursement methodology that predated PPS. Defendant asserts that only one schedule of TEFRA limits was ever issued under § 1395ww(a), and it was this schedule that recognized as "urban" the NECMA. Defendant further alleges that, since the Secretary has not recognized any other "urban" areas under § 1395ww(a), the "similar area" reference to that section in § 1395ww(d)(2)(D) must be to the NECMA.

This argument is persuasive. TEFRA was enacted on September 3, 1982, as part of Public Law No. 97–248. Regulations promulgated pursuant to TEFRA, effective October 1, 1982, utilized the NECMA, in addition to the predecessor of MSAs, to determine urban location. *See* 47 Fed.Reg.

43296. Section 1395ww(d)(2)(D) was added by Public Law No. 98–21, on April 20, 1983. Therefore, the only "similar area" that had been recognized by the Secretary when § 1395ww(d)(2)(D) was enacted was the NECMA.

Even if this Court were to find that the Secretary retained discretion to make an exception to the use of MSAs under the "or ... similar area" language of § 1395ww(d)(2)(D) and § 1395ww(a), that does not mean that the Secretary's adoption of the MSA-based system, as provided in the statute, or his failure to make an exception in plaintiff's case, was unlawful. As stated above, Congress clearly and unequivocally stated that the urban/rural distinction was to be made with reference to MSAs. That is what the Secretary has done, and, in this Court's opinion, that is lawful.

Plaintiff further claims that the Secretary was in effect *required* to exercise its discretion under § 1395ww(d)(5)(C)(iii), which states that "[t]he Secretary shall provide by regulation for such other exceptions and adjustments to such payment amounts under this subsection *as the Secretary deems appropriate....*" (emphasis added). The reviewability of this discretion under the Administrative Procedure Act, or APA, must first be addressed.

■ Defendant contends that the Secretary's decision to provide for exceptions (or not to so provide) was a decision committed to agency discretion by law under the APA, thus not reviewable, under APA § 701(a)(2). Plaintiff argues that, because reviewability is presumed, and there is here no clear and convincing evidence that Congress sought to preclude review, the APA is applicable, and the standard of review is found at APA § 706(2)(A).

The Second Circuit has clearly stated that statutory language allowing regulation "as the Secretary believes appropriate" constitutes clear and convincing evidence of Congressional intent that the agency action is unreviewable. *See New York Racing Association, Inc. v. NLRB,* 708 F.2d 46, 50–51 (2d Cir.1983), *cert. denied,* 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983). Absent the inclusion in the statute of parameters or other standards guiding the exercise of the discretion, the Court has quite literally been given no indicia by which to evaluate the exercise, that is, no law to apply.

The statutory language at issue here falls squarely within the Second Circuit holdings. This Court therefore finds that the creation of exceptions under § 1395ww(d)(5)(C)(iii) is committed to agency discretion by law. The Secretary's action or inaction under this clause is therefore unreviewable.

■ Even were this Court to find that the Secretary's actions under this section were reviewable, the Court would find no abuse of discretion, nor that the failure of the Secretary to make an exception in the case of the plaintiff was arbitrary or capricious.

Given that the language of § 1395ww(d)(5)(C)(iii) evinces such great discretion in the Secretary with respect to the creation of exceptions, any decision thereunder by the Secretary would be a *policy* choice, not a matter of statutory interpretation. Such decision is therefore entitled to great deference and, absent evidence that such decision is "[in]consistent with the congressional mandate," will be upheld by this Court.

The rulemaking record reveals that every year since the institution of PPS the Secretary has thoroughly evaluated the appropriateness of carving out regulatory exceptions to the MSA-based system. The Secretary has in fact exercised its discretion with respect to exceptions. It created an exception for hospitals located in counties which were reclassified from urban to rural, but remained surrounded on all sides by urban counties. It also created an exception for hospitals meeting specific geographic and commuting criteria.

Clearly, then, the Secretary has rationally considered potential exceptions, acting within the scope of discretionary authority granted by statute. As stated by the court in *Medical Center Hospital v. Bowen,* No.

**824**

86–73–CIV–FTM–13A, 1989 WL 234524 (M.D.Fla. June 13, 1989),

The Secretary recognized the shortcomings of the MSA/non-MSA classification system, considered the alternatives, provided some exceptions and concluded, reasonably, that other exceptions were not feasible based on the objective data available at the time. While the plaintiff may be able to show that a contrary conclusion would have inured to its benefit, the plaintiff has not been able to show that the Secretary's decision was otherwise than in accordance with the law.

Slip opinion at 21, 1989 WL 234524 at *10.

In conclusion, the statute defined the rural/urban distinction by reference to MSAs. The Secretary adopted regulations reflecting the statutory definition. The Secretary has exercised its discretionary power under § 1395ww(d)(5)(C)(iii) to provide for certain exceptions to the statutory MSA-based system. The Secretary has considered, and rejected, other non-MSA alternatives. That Congress subsequently enacted legislation, creating a geographical review board and providing for the eventual elimination of all rural/urban distinction with respect to repayment rates, does not render the Secretary's actions, or his failure to grant plaintiff an exception, arbitrary, capricious or an abuse of discretion. Plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

I believe I have an appropriate order, which will be signed and in all probability will be filed today.