**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SOKOL WORLD ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> SMALL BUSINESS ADMINISTRATION, *et al.*, <br><br> Defendants. | Civil Action No. 21-cv-2385 (TSC) |

## MEMORANDUM OPINION

On September 9, 2021, Plaintiff Sokol World Entertainment, Inc. ("Sokol")—owner and operator of Club Cobra, a live entertainment venue in Los Angeles—sued the United States Small Business Administration and its Administrator, Isabella Casillas Guzman (collectively, "SBA") pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Compl., ECF No. 1. Sokol sued the SBA after it was denied funding from the "Shuttered Venue Operator Grant" ("SVOG") program, an emergency relief grant created for operators of shuttered venues during the COVID-19 pandemic.

This court previously granted summary judgment in favor of Sokol, finding that the SBA's denial decision was arbitrary and capricious and remanded the matter to the SBA. *See* Mem. Op., ECF No. 47. Following remand and further review, the SBA again denied Sokol's application. Sokol subsequently filed an Amended Complaint, alleging that SBA's recent denial decision is arbitrary and capricious, not supported by substantial evidence in the record, and contrary to law. Second Am. Compl. ¶¶ 55–65, ECF No. 69.

Sokol has now moved for summary judgment, Pl.'s Mot. for Summ. J., ECF No. 75 ("Sokol MSJ") and the SBA has cross-moved for summary judgment, Def.'s Mot. for Summ. J., ECF No. 77 ("SBA MSJ").  Because the court finds that the SBA's decision was not arbitrary and capricious, was supported by substantial evidence, and was not contrary to law, it will DENY Sokol's motion and GRANT the SBA's cross-motion.

## I.     BACKGROUND

### A.  Legal Background

During the COVID-19 pandemic, Congress established the Shuttered Venue Operators Grant ("SVOG") Program and set aside $15 billion to support shuttered venue operators, which includes live performing arts organizations.  Economic Aid to Hard-Hit Businesses, Nonprofits, and Venues Act, Pub. L. 116-260 §§ 323(d)(1)(H), 324, 134 Stat. 1993, 2021, 2022 (2020) (codified at 15 U.S.C. § 9009a).

To be eligible for SVOG assistance as a live venue operator or "live performing arts organization operator," an entity must show that as a principal business activity it "organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists" for which there is a ticketed cover charge, performers are paid a guaranteed amount by contract or formal agreement, and not less than 70% of revenue is generated through ticket sales, cover charges, event beverages, food, or merchandise.  15 U.S.C. § 9009a(a)(3)(A)(i).  SVOG grants cannot be issued to any venue operator who "presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature."  *Id.* § 9009a(1)(B).

## B. Factual and Procedural Background

### i. *Sokol & Club Cobra – Initial Denial*

Sokol owns and operates Club Cobra, a "live-entertainment venue in Los Angeles, featuring LGBTQ+ oriented shows by local singers, DJs, dancers, and performers."[1] Sokol MSJ at 7. In April 2021, Sokol first applied for a SVOG grant of $486,761.85 for Club Cobra. *Id.* at 9. Its application stated that it neither presents live performances of a prurient sexual nature nor derives more than *de minimis* gross revenue from prurient sexual displays and depictions. Sokol SVOG Application, Redacted J.A. at 220, ECF No. 85 ("J.A."). After its application was denied, Sokol submitted an administrative appeal, which was also ultimately denied. Sokol MSJ at 10–11; J.A. at 225. On September 9, 2021, Sokol filed this action, seeking judicial review of the SBA's denial. Compl. On October 25, 2021, the court granted the SBA's motion for voluntary remand and remanded the matter to the SBA. Oct. 25, 2021 Min. Order.

### ii. *Second Denial*

On November 3, 2021, the SBA again denied Sokol's application, finding that Club Cobra "[p]resented live performances of a prurient sexual nature," and was therefore ineligible for funding under 15 U.S.C. § 9009a(a)(1)(B). J.A. at 223–24; Sokol MSJ at 10. The SBA explained that its finding was based on its review of Club Cobra's social media page, which contained "suggestive images" of male go-go dancers in "seemingly sexualized poses typically wearing only revealing thong underwear or jockey shorts," as well as pictures of dancers "pulling down their

---

[1] The court analyzes Sokol as a live venue operator. *See* SBA MSJ at 8 n.1. ("At times, Plaintiff's Amended Complaint and Motion for Summary Judgment inconsistently assert that Plaintiff demonstrated its eligibility as a "live performing arts organization" as opposed to a "live venue operator." . . . "[T]he distinction is irrelevant to the Court's analysis of the parties' cross-motions as the same statutory definition applies to both qualified activities. *See* 15 U.S.C. § 9009a(a)(3)(A)(i)(I). Importantly, the exclusion for performances of a prurient sexual nature also applies to both. 15 U.S.C. § 9009a(1)(B).")

underwear" and with tip money in their waistbands. Sokol MSJ at 11. The SBA also referenced Yelp.com reviews in which patrons described the "sexy" go-go dancers as "strippers" and "a bit raunchy, touching their penis while dancing." *Id.* Finally, the SBA decision noted that

> [I]n 2020, while Club Cobra was closed due to the pandemic, [Club Cobra's owner] started filming a dance show called "The Clubhouse" featuring erotic videos of the Club Cobra male go-go dancers. The videos were made available for a monthly subscription on the website OnlyFans.com. Club Cobra's Twitter page advertised the erotic dance shows with images of the dancers in highly suggestive poses . . . . [i]n one video clip, a dancer is shown wearing jockey shorts in a shower while he splashes water over his body as the camera pans down over the dancer's bare chest and genitalia. In another video, a dancer [in] only thong underwear is shown sitting on the edge of a bed while the camera pans up and down his body providing close ups of his seemingly aroused genitalia.

J.A. at 224.

On November 24, 2021, Sokol filed its First Amended Complaint challenging SBA's November 3, 2021, denial. First Am. Compl., ECF No. 17. Following cross motions for summary judgment, on September 28, 2022, the court granted Sokol's Motion for Summary Judgment, finding that the SBA's decision was arbitrary and capricious because it did not provide a reasonable justification for why Sokol's apparently similarly situated competitors were treated differently when they received SVOG grants while Sokol did not. Mem. Op. at 11. The court remanded to the SBA "for supplementation of the administrative record as necessary regarding Sokol's competitors." *Id.* at 12.

### iii. Third Denial

On remand, the SBA again denied Sokol's application, based on the prurient interests in Sokol's live performances in violation of 15 U.S.C. § 9009a. J.A. at 271–74. The SBA gave the same reasons for its denial as in the November 3 denial. *See id.* at 271–72 (citing Club Cobra's social media pages, the Yelp.com reviews, and "The Clubhouse" videos as reasons for the denial).

In its December 14 denial letter, the SBA re-evaluated Sokol's alleged competitors who received SVOG grants and whom Sokol asserted in its First Amended Complaint were similarly situated to itself, including (1) Jewel's Catch One Corporation ("Catch One"); (2) Pico Productions; (3) Club Los Globos Corporation ("Los Globos"); (4) Vern Theater Inc. ("Vern Theater"); and (5) Reload Entertainment. *Id.* at 271–74; Sokol MSJ at 12. The SBA rejected the contention that it treated Sokol disparately from these competitors. J.A. at 271–74.

The SBA stated that its "staff conducted a preliminary re-evaluation" of the five competitor applications "for program integrity and quality assurance purposes" and "specifically examined these entities to see if they raise any concerns regarding presenting live performances of a prurient sexual nature." *Id.* at 272. During its review, the SBA "endeavored to view the materials that would have been available at the time the grant was awarded in order to replicate, to the extent possible, the initial review of the applications." *Id.* at n.1. According to the SBA:

> For three of Plaintiff's identified competitors (Jewel's Catch One Corporation, Club Los Globos Corporation, and Vern Theater Inc.), SBA reviewed the marketing materials for these businesses and determined that any events Plaintiff identified in their Amended Complaint occurred after the business received an award. J.A. at 272–74. SBA noted that "[a]ny events that occur after an award is made that raise concerns about an entit[y's] use of grant funds on ineligible activities will be reviewed and addressed in the grant monitoring and audit process." *Id.* For the other two identified competitors (Pico Productions and Reload Entertainment), SBA determined that there was not sufficient evidence that these businesses put on live performances of prurient interest. As a result, SBA determined that it properly denied Plaintiff an SVOG award. J.A. at 273–74.

SBA MSJ at 13.

After the court stayed this case for nearly a year following a partial rescission of funds for the SVOG program, and after the SBA recouped a significant amount of funds, the court lifted the stay. *See* Jan. 1, 2024 Min. Order. On January 23, 2024, Sokol amended its Complaint to challenge the December 14 denial decision. Second Am. Compl. Both parties again moved for summary judgment.

## II.    LEGAL STANDARD

### A.  Summary Judgment

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In an Administrative Procedure Act ("APA") case, the court "sits as an appellate tribunal" for the agency when evaluating a motion for summary judgment under Federal Rule of Civil Procedure 56, rather than considering whether there are genuine disputes of material fact. *Am. Bioscience Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

"The entire case on review is a question of law," and the court should only consider "arguments about the legal conclusion to be drawn about the agency action." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). This review is, therefore, based on "the administrative record already in existence" at the time of the agency action. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

### B.  APA Review

Under the APA, a court will set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," contrary to statute, or unsupported by substantial evidence. 5 U.S.C. § 706(2). The arbitrary and capricious standard of § 706(2)(A) is a "catchall" that generally subsumes the "substantial evidence" standard of § 706(2)(E). *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984). In an arbitrary and capricious challenge, the central question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983); *see also Nat'l Tel. Coop.*

*Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained.").

## III.  ANALYSIS

### A. The SBA's Decision Was Not Arbitrary or Capricious

*i.   The SBA considered relevant evidence and gave a reasoned explanation for its denial.*

A "fundamental" requirement of administrative law is that an agency "set forth [] reasons" for its decision; failure to do so constitutes arbitrary and capricious agency action. *Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (citing *Roelofs v. Sec'y of the Air Force,* 628 F.2d 594, 599 (D.C. Cir. 1980).  In denying an application, "the core requirement is that the agency explain why it chose to do what it did." *Tourus Recs.*, 259 F.3d at 737 (internal quotation marks omitted) (quoting Henry J. Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 DUKE L.J. 199, 222 (1969)).  The denial must be one of "reasoning;" it must not be just a "conclusion;" it must "articulate a satisfactory explanation" for its action. *Tourus Recs.*, 259 F.3d at 737.  But the denial only requires a "modest" explanation, that "probably does not add to, and may even diminish, the burden put on an agency by the APA's provision for judicial review." *Roelofs*, 628 F.2d at 601.

Sokol argues that the SBA failed to examine facts and evidence about whether it qualifies for a SVOG grant as a live venue operator.  It contends that it submitted extensive evidence demonstrating its award eligibility in support of its application and appeal but the "SBA examined none of it."  Sokol MSJ at 17–18.  It argues that the agency instead "relied on a flawed portrayal of Club Cobra as a 'prurient' establishment, a characterization that is not supported by substantial evidence." *Id.* at 18.

Judicial review of agency action is "highly deferential . . . the court presumes the validity of agency action and must affirm unless the [agency] failed to consider relevant factors or made a clear error in judgment." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020) (cleaned up) (quotation marks omitted). Based on the record before it, the court finds that the SBA's decision was not arbitrary and capricious because it considered relevant evidence and gave a reasoned explanation for its decision, and the decision was supported by substantial evidence.

First, in its denial letter, the SBA explained the process for determining initial eligibility for a SVOG grant and how and why an application might get flagged for further review. J.A. at 272 ("when determining initial eligibility for an SVOG grant, SBA primarily reviewed the materials submitted by the applicant in their application."). After reviewing the submitted materials and an applicant's website, "if there were no concerns regarding prurient interest the review ended," but "[i]f a concern was raised, the file was flagged and sent for a subsequent review by Legal Counsel . . . to determine the nature of the business and whether it ran afoul to the statutory requirements." *Id.*

Then, the SBA explained why Sokol's marketing materials prompted further review. The SBA found that based on the record evidence, "Sokol's social media pages for Club Cobra . . . contain numerous suggestive images depicting [] male go-go dancers in seemingly sexualized poses typically wearing only revealing thong underwear or jockey shorts." *Id.* at 271 (cleaned up). These marketing materials "prompted the file to be referred for further review." *Id.* at 272.

Finally, the SBA then explained its further review of the images of dancers in sexualized poses on Club Cobra's social media pages, the Yelp.com reviews and images, and "The ClubHouse" marketing videos on Twitter. *See supra* Section I (B)(ii). The SBA ultimately found that given this evidence, Sokol was not "an eligible entity for SVOG funding." *Id.*

The SBA's decision was not arbitrary and capricious because it "set forth [] reasons" for its denial decision and explained "why it chose to do what it did." *Tourus Recs.*, 259 F.3d at 737. And the record evidence supports its conclusion. J.A. at 16–25. Sokol submitted evidence that it claims demonstrated its eligibility for "each of the award eligibility criteria," Sokol MSJ at 18. And the SBA—in its review of these very same materials—disagreed and found Sokol ineligible for the SVOG program on the basis that the business violates 15 U.S.C. § 9009a. SBA MSJ at 12–14. So long as an agency "articulate[s] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle*, 463 U.S. at 43 (quotation marks omitted), a court may not "substitute [its] judgment for the agency's," even if it "might have reached a different conclusion in the first instance." *Epsilon Elecs. Inc. v. United States Dep't of Treasury*, 857 F.3d 913, 918 (D.C. Cir. 2016). The court finds that the SBA articulated a satisfactory explanation for its decision.

*ii.    The SBA Adequately Explained Alleged Disparate Treatment*

Sokol next argues that its denial was arbitrary and capricious because the SBA treated Sokol disparately from similarly situated competitors. *See* Sokol MSJ at 8–11. Specifically, Sokol argues that these competitors, "like Sokol, put on male dance entertainment of an 'erotic' and 'sexy' variety geared toward the LGBTQ+ community." *Id.* at 9. Sokol contends that the SBA's continued failure to legitimately distinguish these businesses "constitutes disparate treatment of similarly situated entities." *Id.* at 17.

It is a "fundamental norm of administrative procedure" that an agency must "treat like cases alike." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). An agency that treats similar cases differently must explain its inconsistent treatment when the decision is made, *see Baltimore Gas & Elec. Co. v. FERC*, 954 F.3d 279, 285 (D.C. Cir. 2020) ("the duty to explain

inconsistent treatment is incumbent on the agency"), and must provide a "reasonable justification" for any adverse treatment, *see ANR Storage Co. v. FERC*, 904 F.3d 1020, 1025 (D.C. Cir. 2018).

The court previously addressed Sokol's claim that the SBA denied its application while approving applications from similar competitors without explaining the discrepancy. *See* Mem. Op. at 10–11. On review after remand, the court finds that, unlike the November 3 denial, in its December 14 denial, the SBA sufficiently explained and provided a reasonable justification for any inconsistent treatment.

First, the SBA explained how its staff conducted a preliminary re-evaluation of the applications of the five named competitors "to see if they raise[d] any concerns regarding presenting live performances of a prurient sexual nature." J.A. at 272. The reviewers "endeavored to view the materials that would have been available at the time the grant was awarded in order to replicate, to the extent possible, the initial review of the applications." *Id.* at n. 1.

Then, the SBA explained the agency's findings, dedicating a paragraph to each competitor. As to Reload, the SBA discussed specific differences in both companies' marketing materials. *Id.* at 274. As to Pico Productions, it explained that burlesque performances are not automatic disqualifiers to an award and a review of Pico Production's website materials did not reveal any suggestive images or individuals in suggestive clothing. *Id.* at 273. As to Catch One, the SBA explained that it reviewed the available marketing materials on Catch One's website and found no evidence that Catch One presented performances of a prurient sexual nature, in part because the individuals in its promotion materials were clothed and promoting shows that were not of a prurient or sexual nature. *Id.* Finally, as to Vern Theater and Los Globos, the SBA explained that a review of their respective Facebook pages did not show any individuals in revealing clothing or in any

sexually suggestive images or poses, and their marketing materials showed no evidence that they presented performances of a prurient sexual nature. *Id.* at 273–74.

Sokol points to events at some of these companies suggesting they might host events that are disqualifiers to a SVOG grant. Sokol MSJ at 15–17. But the SBA explained that those events occurred after the companies received their grants, so those events "would not have been reviewed during the initial eligibility determination process." J.A. at 273. The SBA noted that "any events that occur after an award is made that raise concerns about an entities [sic] use of grant funds on ineligible activities will be reviewed and addressed in the grant monitoring and audit process." *Id.*

The court finds that based on the record, the SBA considered relevant distinctions and came to a rational conclusion. The SBA's explanation alleviates its previous failure to differentiate Sokol from its competitors. The court finds that the SBA gave a "reasonable justification" for any adverse treatment, *ANR Storage Co.*, 904 F.3d at 1025, and provided a reasoned explanation that enabled the court to "discern" the "path" the agency took, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citation omitted); *accord Jost v. Surface Trans. Bd.*, 194 F.3d 79, 85 (D.C. Cir. 1999). Accordingly, the SBA's denial decision will not be set aside as a violation of the APA.

**B. The SBA's Decision was Consistent with the SVOG Statute and Not Contrary to Law**

Sokol argues that the SBA's denial of its application is contrary to the SVOG statute, the SBA's decision that Sokol is a prurient business is not supported by substantial evidence, and Sokol meets the eligibility criteria listed in the statutory definition of "eligible person or entity" in 15 U.S.C. § 9009a(1)(A). Sokol MSJ at 13, 16. Applying the "traditional tools of statutory construction," *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 374 (2024), the court agrees with the SBA.

The primary dispute here is the parties' differing views on the definition of "prurient." Sokol contends that the SBA applies an "unwarrantedly broad interpretation" of "prurient." Pl.'s Reply at 3, ECF No. 81 ("Sokol Reply"). Sokol contends that, as defined by the Supreme Court, "prurient" subject matter appeals to a "shameful or morbid" and unhealthy interest in sex. Sokol MSJ at 19 (citing to *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957)). Sokol argues that under this interpretation, even if some of Club Cobra's performances are "erotic," its performances do not appeal to a "shameful," "morbid," or "unhealthy" interest in sex, and therefore are not "prurient." Sokol Reply at 4. Sokol urges the court to interpret "prurient" consistently with obscenity jurisprudence, citing to the *Miller* obscenity test.[2] Sokol MSJ at 19.

The SBA counters that, on its face, the authorizing statute § 9009a is unambiguous: it only uses the term "prurient," not the terms "obscene," "pornographic," or "unlawful." SBA MSJ at 20. It argues that, to the extent the statute *is* ambiguous, the court should look to how the SBA has, in similar financial assistance programs, consistently interpreted its own "prurient" standard, which is prurient in a colloquial sense, "akin to lascivious, lustful, or erotic," and not confined to a "shameful or morbid" and "unhealthy" interest in sex. *Id.* at 19, 20–21. In support of this interpretation, the SBA points to the legislative history of the SVOG program, primarily Congress' adoption of the "precise terminology" of prurient already in use by the SBA in its regulation governing similar financial assistance programs—its 7(a) and 504 loan programs. *Id.* at 20–21.

---

[2] *Miller v. California*, 413 U.S. 15, 24 (1973) (establishing three factors for defining obscenity: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.") (quoting *Roth*, 354 U.S. at 485).

*i. Statutory Interpretation – "Prurient" Standard*

Courts must "interpret statutes, no matter the context, based on the traditional tools of statutory construction." *Loper Bright*, 603 U.S. at 374. The court "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 369. Therefore, when "addressing a question of statutory interpretation, we begin with the text." *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018). And to "construe [] text, we look to the ordinary meaning of its key terms." *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024). "Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015).

Pursuant to the authorizing statute, SVOG grants cannot be issued to a person or entity that "presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." 15 U.S.C. § 9009a(1)(B).

The court first considers what "prurient" means under § 9009a, which does not provide a definition. Merriam-Webster Dictionary defines "prurient" as "marked by or arousing an immoderate or unwholesome interest or desire; especially, marked by, arousing, or appealing to sexual desire." Prurient, Merriam-Webster, https://www.merriam-webster.com/dictionary/prurient (last visited February 25, 2025)—the same definition the SBA cited to in its December 14, 2022, denial decision. *See* J.A. at 271.

It is true that, in obscenity jurisprudence, "prurient" is generally defined as involving an unhealthy or abnormal interest in sex or nudity. In *Roth v. United States*, the Supreme Court defined "prurient" as "having itching, morbid, or lascivious longings," similar to Sokol's

interpretation of "prurient," but it also defined "prurient" as "uneasy with desire or longing," which is more akin to the SBA's interpretation of "prurient" as lascivious, lustful, or erotic. *See* 354 U.S. at 487 n.20; SBA MSJ at 21. "Prurient" is also not exclusively a term of art. *Cf. Miller v. California*, 413 U.S. at 18 n. 2 (noting how the definition of 'obscene,' as used in that case, has a specific judicial meaning derived from *Roth*, 354 U.S. 487, and "does not reflect the precise meaning of 'obscene' as traditionally used in the English language."). Like "obscene," "prurient" has a broader meaning outside of legal contexts, such as the one in Merriam-Webster.

The authorizing statute's history and purpose help determine the proper construction of the text. A review of the SVOG program's legislative history reveals no specific explanation for why Congress included the "prurient sexual nature" exemption in 15 U.S.C. § 9009a. As both parties note, Congress expressly incorporated into the SVOG statute the precise terms of exclusion listed in SBA's regulation governing its 7(a) and 504 loan programs, which prohibit financial assistance to businesses of a "prurient sexual nature."

When the SBA first proposed the regulation governing its 7(a) and 504 loan programs in 1995, it "determined that it may exclude small businesses engaging in lawful activities of an obscene, pornographic, or prurient sexual nature." 60 Fed. Reg. 64356, 64360 (Dec. 15, 1995). As Sokol points out, the preamble to the proposed rule references the *Miller* test for obscenity in describing activities "of a prurient sexual interest" for purposes of the SBA's 7(a) and 504 loans. Business Loan Programs, 60 Fed. Reg. 64356, 64360 (Dec. 15, 1995) (adopted as a final rule after a notice and comment period 61 Fed. Reg. 3226, 3240 (Jan. 31, 1996)).

But the *Miller* obscenity test does not appear in the final adoption of the rule. And when Congress passed the SVOG statute, it adopted the same language the SBA had been using and interpreting in the context of its 7(a) and 504 loan programs since 1996. *Compare* 13 C.F.R.

§ 120.110(p) (ineligible businesses for 7(a) and 504 loans include "[b]usinesses which: (1) Present live performances of a prurient sexual nature; or (2) Derive directly or indirectly more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.") *with* 15 U.S.C. § 9009a(a)(1)(B) (ineligible businesses for SVOG grants includes businesses who "present live performances of a prurient sexual nature; or derive, directly or indirectly, more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature."). The SBA argues that Congress's adoption of the precise terminology already in use by the SBA in its other financial assistance programs strongly implies that Congress intended to adopt the SBA's interpretation of that terminology. SBA MSJ at 21.

Given the foregoing legislative history, the court declines to follow Sokol's interpretation of "prurient." Particularly persuasive is the fact that Congress expressly incorporated the precise terms of SBA's regulations governing its other financial assistance programs when passing the SVOG statute. Courts generally presume that Congress is aware of an existing administrative interpretation of a statute and that it intends to adopt that interpretation when it creates a new law incorporating parts of a prior law. *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.").

This analysis does not simply defer to the agency's interpretation of the SVOG statute. The court instead used "every tool" at its disposal to determine the "best reading of the statute" "after applying all relevant interpretive tools." *Loper Bright*, 603 U.S. at 400. Because the SBA reasonably determined that the sexually suggestive images and performances on Club Cobra's

social media were evidence that Sokol was ineligible for SVOG funds based on the statute's explicit exclusion of performances of a prurient sexual nature, the court finds that the SBA's decision was consistent with the SVOG statute and was not contrary to law.

## IV.     CONCLUSION

For the foregoing reasons, Sokol's motion for summary judgment will be DENIED.  The SBA's cross-motion for summary judgment will be GRANTED.  An Order will accompany this Memorandum Opinion.


Date: March 20, 2025


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge