MILLARD REFRIGERATED
SERVICES, INC.,
Petitioner

v.

FEDERAL AVIATION
ADMINISTRATION,
Respondent,

Omaha Airport Authority, Intervenor.

No. 95–1535.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 20, 1996.

Decided Oct. 25, 1996.

Andrew R. Plump, Washington, DC, argued the cause for petitioner.

Marc P. Richman, Attorney, United States Department of Justice, Washington, DC, argued the cause for respondent. Frank W. Hunger, Assistant Attorney General, and Anthony J. Steinmeyer, Attorney, United States Department of Justice, Washington, DC, were on brief.

Terrence D. O'Hare, Omaha, NE, argued the cause for intervenor. Charles A. Spitulnik, Washington, DC, was on brief.

Patricia A. Hahn, was on brief for amicus curiae Airports Council International–North America.

Ronald D. Golden, Frederick, MD, and Herbert A. Rosenthal, Washington, DC, were on brief for amici curiae Aircraft Owners and Pilots Association and National Business Aircraft Association.

Before: EDWARDS, Chief Judge, WALD and HENDERSON, Circuit Judges.

Opinion for the court filed by HENDERSON, Circuit Judge,

KAREN LeCRAFT HENDERSON, Circuit Judge:

Millard Refrigerated Services, Inc. ("MRS") petitions for review of the dismissal by the Federal Aviation Administration ("FAA") of its complaint against the Omaha Airport Authority ("OAA"). MRS made a number of charges against the OAA in connection with the OAA's decision to bar heavy aircraft, including MRS's corporate jet, from using Millard Airport, located outside Omaha. The FAA rejected all of MRS's claims. MRS's petition to this court argues only that the FAA should have interpreted the Airport Noise and Capacity Act of 1990 ("ANCA") and the FAA's own regulations under ANCA to apply to the OAA's decision because it constitutes a restriction on airport use that affects quiet aircraft, whether or not the restriction was intended to limit airport noise. Instead of addressing the substance

of MRS's petition, the FAA argues that the petition raises an issue not raised before the agency and therefore this court should deny the petition. But MRS did raise the issue before the agency and the FAA failed to resolve it. Accordingly, we remand the case to the FAA for it to determine whether the prohibition on heavy aircraft at Millard Airport is a restriction subject to ANCA as interpreted by its regulations.

## I. BACKGROUND

MRS wants to continue to base its corporate jet at Omaha's secondary airport, Millard Airport. MRS's jet is comparatively heavy: under the FAA's weight categorization scheme, it is an aircraft with a maximum certificated takeoff weight in excess of 12,500 pounds. 14 C.F.R. § 1.1 (1996) (defining "Large aircraft" and "Small aircraft"). It is also relatively quiet: in the FAA's parlance, it is a "Stage 3 airplane." 14 C.F.R. § 36.1(f)(5) (1996) (defining "Stage 3 airplane").

The OAA operates both Millard Airport and Omaha's primary airport, Eppley Airfield. In 1992, the OAA submitted to the FAA a proposed Airport Layout Plan ("ALP") that restricts Millard Airport to use by aircraft weighing (that is, with a maximum certificated takeoff weight of) no more than 12,500 pounds. The ALP previously in effect allowed planes weighing up to 30,000 pounds to use the airport.[1] The OAA decided to make the change primarily because of the cost difference between the work needed to upgrade the airport to current FAA safety standards for light planes only (approximately $156,000) and the work needed to upgrade to current FAA safety standards for heavier planes (approximately $3,550,000). The new ALP, although based expressly on size distinctions and safety considerations, had the effect of barring a number of stage 3 aircraft, including MRS's jet, from using Millard Airport. On April 7, 1993, the FAA approved the new ALP for Millard Airport.

On May 5, 1993, MRS filed a formal complaint against the OAA alleging that the new ALP violated a number of statutory provisions and the terms of various federal grant agreements entered into by the OAA. On August 10, 1994, MRS filed an amended complaint. Paragraphs 44 to 51 of the amended complaint allege that, by effectively banning heavy stage 3 aircraft, the OAA violated ANCA, which in MRS's view sets forth the exclusive procedures for imposing limits, whether direct or indirect, intended or unintended, on quiet aircraft. JA A110–11. MRS's complaint requests, among other things, that the FAA condition future FAA grants to the OAA as well as the OAA's ability to impose facility charges on "[c]ompliance with [ANCA] and all regulations promulgated thereunder."[2] JA A111.

On August 4, 1995, the FAA issued a Record of Decision dismissing MRS's complaint in its entirety. The Record of Decision deals with the ANCA issue very briefly, concluding that the restrictions contained in the new ALP were not designed to limit noise but instead were "directed at protecting the Airport's pavement from being overstressed by the operation of [heavy aircraft] and at addressing general safety concerns." JA A282. The Record of Decision adds, without mentioning ANCA by name, that the FAA had already addressed and rejected MRS's noise and access arguments in a letter to MRS from the FAA's Associate Administrator for Airports. JA A282. Responding to a separate complaint that MRS had filed with the FAA's regional office, that letter denied MRS's ANCA claim because the prohibition on heavy aircraft "was not imposed to control noise or limit access" and thus was "not a noise or access restriction within the meaning of ANCA." JA A245.

On October 17, 1995, MRS filed a petition for review of the FAA's decision. The only substantive issue MRS raises on appeal is

---

1. Although it has a maximum certificated takeoff weight of 30,650 pounds, JA A118, MRS's jet apparently complied with the earlier ALP.

2. Under ANCA, both federal airport improvement grants and an airport authority's authority to charge passenger facility fees depend on the airport authority's compliance with the procedures governing restrictions on stage 3 aircraft. 49 U.S.C. § 47524(e) (1996).

whether the FAA ignored its own regulations.

## II. DISCUSSION

MRS argues that in its regulations the FAA interprets section 9304 of ANCA to apply to any limitation on a stage 3 aircraft's use of an airport, regardless whether the limitation was designed to reduce airport noise.[3] MRS believes that, based on the statute's express language, the FAA's implementing regulations and the FAA's official statements made in connection with those regulations, section 9304 as implemented by those regulations must be interpreted to apply to any restriction on stage 3 aircraft, whether direct or indirect, intentional or incidental.[4]

■ The FAA responds not to the merits of MRS's argument but instead asserts that MRS is raising this issue for the first time in its petition for review and therefore this court should refuse to consider it. Count V of MRS's complaint, however, specifically alleges that the OAA violated ANCA by imposing a restriction on stage 3 aircraft without complying with the procedures set forth in the law. JA A110–11. MRS laid the factual groundwork for that count by explaining that its jet "is a Stage 3 aircraft within the meaning of [ANCA]." JA A110. The gravamen

of the count rests on MRS's assertion that ANCA governs any "noise or access restriction which directly *or indirectly* limits" stage 3 aircraft. JA A111 (emphasis in original). For MRS's purpose, it matters only that the new ALP has the effect, whether indirect or incidental, of restricting use of Millard Airport by stage 3 aircraft, specifically MRS's corporate jet. By alleging that the Millard Airport weight restriction violated ANCA, MRS necessarily raised the issue whether ANCA applies to any restriction affecting stage 3 aircraft or only to restrictions designed to limit airport noise.

The FAA asserts, to the contrary, that Count V alleges only that the OAA used safety as a pretext to limit noise at Millard Airport and thus does not raise the issue of the scope of ANCA's applicability. Given the Count V language quoted above, the FAA's assertion seems facially implausible. Nevertheless, the FAA observes that, in an earlier count claiming the OAA also violated the equal protection clause of the United States Constitution and various grant conditions, MRS alleged that "[t]he pretextual basis for the [OAA's] October 16, 1992 action [to revise the ALP] was that of public safety." JA A108. The FAA then directs our attention to Count V's first paragraph, which, like the first paragraph of every count, incorporates all of the preceding paragraphs. The two

---

3. Section 9304 governs, among other things, "a restriction on the total number of stage 3 aircraft operations" and "any other restriction on stage 3 aircraft." 49 U.S.C. § 47524(c)(1)(B), (E) (1996).

The regulation that defines "noise or access restrictions" under ANCA provides in part:

*Noise or access restrictions* means restrictions (including but not limited to provisions of ordinances and leases) affecting access or noise that affect the operations of Stage 2 or Stage 3 aircraft, such as limits on the noise generated on either a single-event or cumulative basis; a limit, direct or indirect, on the total number of Stage 2 or Stage 3 aircraft operations; a noise budget or noise allocation program that includes Stage 2 or Stage 3 aircraft; a restriction imposing limits on hours of operations; a program of airport-use charges that has the direct or indirect effect of controlling airport noise; and any other limit on Stage 2 or Stage 3 aircraft that has the effect of controlling airport noise.

14 C.F.R. § 161.5 (1996).

4. In the final rule adopting 14 C.F.R. § 161.5, the FAA stated:

The definitions of "noise" and "access" restrictions and the applicability of the proposed rule were primarily based on language of the Act. Subsection 9304(a) of the Act requires the establishment of a "national program for reviewing noise and access restrictions on operations of Stage 2 and Stage 3 aircraft." Clearly, the Act requires the review of both noise and access restrictions. In paragraph (b) of section 9304, the Act addresses restrictions on Stage 3 aircraft operations subject to review. Again, the Act explicitly references both noise and access restrictions and the paragraph provides an illustrative, but not exclusive, list of types of covered restrictions. The descriptive phrases "a limit, direct or indirect, on the total number of Stage 3 aircraft operations" and "any other limit on Stage 3 aircraft" are included in the illustrative list. The Act, therefore, contemplates a broad review of restrictions including those that have an indirect effect on airport noise.

56 Fed.Reg. 48,861, 48,863–64 (1991).

excerpts taken together, the FAA reasons, reveal that Count V is based solely on an allegation of pretext.

Besides lacking any precedential support, the FAA's reasoning is pure sophistry. To accept the FAA's argument would require us to conclude that only the first count of a complaint has any force if all succeeding counts incorporate it by reference. Raising the issue of pretext in one count of its complaint does not, and cannot, convert MRS's entire complaint into a sole allegation of pretext.

MRS's complaint raised the issue that ANCA as interpreted by the FAA in its regulations applies to direct as well as indirect restrictions on stage 3 operations. The FAA failed to resolve this issue. That failure prevents us from reviewing the FAA's decision. If an agency does not resolve a dispositive issue properly raised before it, this court does not attempt to review its action; indeed, there is nothing for us to review. *See Oil, Chemical & Atomic Workers Int'l Union v. NLRB,* 46 F.3d 82, 93 (D.C.Cir.) ("When ... the agency has failed to take a position, we do not substitute our judgment for that of the agency or attempt to surmise what the agency's position might have been."), *cert. denied,* — U.S. ——, 116 S.Ct. 81, 133 L.Ed.2d 39 (1995); *see also Dickson v. Secretary of Defense,* 68 F.3d 1396, 1405–06 (D.C.Cir.1995) ("[W]e cannot determine whether the decision making process was deficient until we are allowed to understand what that process was."); *United Transp. Union–Ill. Legislative Bd. v. ICC,* 52 F.3d 1074, 1079 (D.C.Cir.1995) (remand is required if court is "completely in the dark about the Commission's reasoning"). We therefore remand the case to the FAA for it to consider whether the weight restriction imposed by the Omaha Airport Authority at Millard Airport is subject to the provisions of the Airport Noise and Capacity Act of 1990, as implemented by the FAA's regulations.

*So ordered.*