106 F.3d 442
 323 U.S.App.D.C. 173
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
KAMINE/BESICORP ALLEGANY L.P. and General Electric Capital
Corporation, Intervenors.
 No. 96-1098.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 26, 1996.
 
 Before EDWARDS, Chief Judge, RANDOLPH and ROGERS, Circuit Judges.
 
 JUDGMENT
 
 1
 This case was heard on the petition for review of an order of the Federal Energy Regulatory Commission. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the petition for review is hereby denied.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41.
 
 MEMORANDUM
 
 4
 Petitioner Rochester Gas and Electric Company seeks review of the grant by the Federal Energy Regulatory Commission ("FERC") of a temporary waiver of its operating and efficiency standards during start-up and testing to a cogeneration facility, Kamine/Besicorp Allegany ("Kamine"). At the time it began producing electricity, Kamine failed to have its electrical generating facility connected to its thermal host. Kamine sought a temporary retroactive waiver of the operating and efficiency standards for qualifying cogeneration facilities, see 18 C.F.R. § 292.205, on the ground that its difficulties arose during the start-up and testing phase of the project's operation, and that it anticipated that it would not need additional waivers in the future. Rochester intervened and protested Kamine's application. FERC granted a retroactive eleven week waiver to Kamine, 73 F.E.R.C. p 61,290 (1995), and denied Rochester's petition for a rehearing. 74 F.E.R.C. p 61,094 (1996).
 
 
 5
 In granting Kamine's waiver, FERC relied on 18 C.F.R. § 292.205(c), which permits it temporarily to waive the operating and efficiency standards for cogenerating facilities. Applying the standards it had previously used to determine whether to grant a waiver, FERC determined that Kamine's waiver request met many of those standards and was consistent with the goals of § 210 of the Public Utility Regulatory Policies Act ("PURPA"),[1] to encourage cogeneration. In response to Rochester's objection that Kamine was not entitled to a waiver because Kamine's failure to comply was its own fault, resulting from its business decisions, FERC explained that it does not consider the reasons behind waiver requests during the start-up and testing phase. In denying rehearing, FERC observed that Rochester's rate concerns were outside the scope of the waiver proceeding, and that "while the utility-purchaser's opposition is a negative factor ... we do not view [that] opposition to waiver to be the determining factor in our consideration of a [qualifying facility's] waiver request." FERC noted that it had "granted waivers to other facilities which knowingly began start-up and testing at the end of a calendar year without being able to deliver steam to a thermal host, and which sought waiver after the fact...." FERC reiterated that it "does not endeavor to determine or apportion responsibility for problems of compliance with the operating and efficiency standards during the start-up period."
 
 II.
 
 6
 The court gives due deference to FERC's interpretation of its organic statutes, see Greensboro Lumber Co. v. FERC, 825 F.2d 518, 522 (D.C.Cir.1987), deferring to FERC's decision to grant a waiver unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Moreover, "we have traditionally afforded an agency determination whether to grant a waiver of a rule maximum deference." Dickson v. Sec'y of Defense, 68 F.3d 1396, 1408 (D.C.Cir.1995).
 
 
 7
 Rochester does not challenge the fact that FERC has authority under its rules to waive its operating and efficiency standards for cogenerators "upon a showing that the facility will produce significant energy savings." 18 C.F.R. § 292.205(c). Nor does it challenge the fact that FERC grants waivers of the operating and efficiency standards based on several factors,[2] with no single factor being dispositive. See LG & E--Westmoreland Southhampton, 68 F.E.R.C. p 61,034 (1994), at 61,113. Rather, Rochester contends that although FERC properly can grant waivers liberally during the start-up and testing phase in order to serve PURPA's goal of encouraging cogeneration pursuant to 16 U.S.C. § 824a-3(a), see LG & E--Westmoreland Rensselaer, 71 F.E.R.C. p 61,129 (1995), at 61,414, Kamine did not demonstrate that it is entitled to such a waiver. It takes this position notwithstanding FERC's finding that Kamine's application satisfied the majority of tests for granting a waiver. Specifically, the waiver Kamine requested was only for eleven weeks; non-compliance was limited to the start-up and testing stage; Kamine requested waiver in as timely a manner as possible, immediately upon finalizing the arrangements for the thermal host, the earliest date when Kamine knew the length of the waiver that would be required; and granting a waiver to Kamine would further PURPA's overall goal of encouraging cogeneration.
 
 
 8
 Rochester's main objection is that Kamine would, by virtue of declaring operability in 1994, be able to take advantage as a qualifying cogenerator of applicable escalating rate provisions to the detriment of Rochester and its customers. See 16 U.S.C. § 824a-3(b)(1). Contrary to Rochester's contention, however, FERC is not abrogating its duty to protect the interests of consumers and the public interest in violation of PURPA and the Federal Power Act ("FPA"). FERC previously has granted waivers despite opposition from the purchasing utility for rate-related reasons. See, e.g., Gordonsville Energy, 72 F.E.R.C. at 61,790-91; Indeck-Olean Ltd. Partnership & Niagra Mohawk Power Corp., 74 F.E.R.C. p 61,239 (1996), at 61,820. Moreover, objections to rates should be directed to the state utility commission rather than to FERC in a proceeding on an application for waiver, see LG & E--Westmoreland Rensselaer, 71 F.E.R.C. at 61,414 n. 7; otherwise, each waiver proceeding would provide an opportunity for a utility to relitigate the rate contract it signed with a qualifying cogenerator.[3]
 
 
 9
 In contending that FERC arbitrarily refused to evaluate Rochester's claim that Kamine was at fault for its inability to have its thermal unit in operation at the time it began producing electricity, Rochester relies on three cases. In United States Dep't of the Navy, 69 F.E.R.C. p 61,304 (1994), FERC rejected a waiver application, in part, because the "fact that management errors or oversights are unintentional simply does not provide good cause for waiver. Indeed, we would expect all waiver requests to reflect situations in which noncompliance was not intentional." Id. at 62,175. So too, Rochester maintains, Kamine's difficulties in having a host in place were due to its own fault, by contrast with situations in which the failure was beyond the control of the facility. In LG & E--Westmoreland Southampton, FERC denied waiver to an applicant that alleged that its failure to comply with the applicable standards was the fault of its own operator, noting "we cannot find that the current request is based entirely on factors outside of Southampton's control." 68 F.E.R.C. at 61,113. In Metropolitan Dade County, Florida v. Energy Sys. Div. of Thermo Electron Corp., 65 F.E.R.C. p 61,090 (1993), FERC denied a waiver application, in part, based on the importance of complying with the technical requirements of qualifying facilities. Id. at 61,539-40.
 
 
 10
 However, none of the three cases involved solely a start-up and testing situation. See United States Dep't of the Navy, 69 F.E.R.C. at 62,174; LG & E--Westmoreland Southampton, 68 F.E.R.C. at 61,113; Metropolitan Dade County, 65 F.E.R.C. at 61,539. On this point, FERC stated:
 
 
 11
 In their protests, the New York Commission and Rochester assert that the cause of non-compliance was [Kamine's] decision to begin start-up and testing prior to the completion of the steam host. The New York Commission and Rochester also question whether the current steam host produces sufficient energy savings to warrant a waiver.
 
 
 12
 The Commission, in evaluating start-up and testing waiver requests, does not endeavor to determine or apportion responsibility for problems that occurred during the start-up period.
 
 
 13
 73 F.E.R.C. p 61,290 (1995), at 61,809. FERC reasonably refused to involve itself in ascertaining the reasons for non-compliance in the start-up and testing phase. See Gordonsville Energy, 72 F.E.R.C. at 61,791. As Kamine states, having FERC "engage in this kind of evidentiary inquiry would only unnecessarily complicate the [qualifying facility] waiver process and result in [FERC's] becoming embroiled in trial-like hearings on construction and other commercial law issues often found in start-up operations."
 
 
 14
 Rochester's contention that FERC mischaracterized Kamine's failure to have its steam host in place when it began producing electricity as a problem with start-up and testing is also meritless. A start-up problem need not relate only to the electricity generating equipment. See id. FERC previously has characterized as a start-up problem the situation in which a cogenerating facility produced electric energy prior to the completion of its thermal host. Polk Power Partners, L.P., 66 F.E.R.C. p 61,116 (1994), at 61,202. Rochester's contention that Polk Power is distinguishable because the facility requested waiver prospectively and the other parties supported waiver does not alter the fact that FERC treated the failure to have the thermal host in operation at the time the cogenerator first produced electricity as a start-up and testing problem.
 
 
 15
 Rochester's factor-by-factor challenge to FERC's determinations under the waiver standards also cannot withstand scrutiny. FERC properly rejected Rochester's claim that it was unclear whether Kamine would require further waivers because it did not "have a steam host constructed and placed in service." Kamine's greenhouse had been built; only the last step of connecting the greenhouse to the generating facility was not complete. Hence, FERC reasonably could conclude that Kamine did not anticipate the need for another waiver. As to Rochester's claim that it satisfied several of the factors militating against the grant of waiver--it opposed Kamine's request, the facility did not involve an innovative technology, would not produce gains in employment, and would not create other efficiencies--FERC acted within its discretion in concluding that these negative factors, if true, were outweighed by the several positive factors it set forth in its order. Under the circumstances, the court has no basis to second-guess FERC's expert determination that the factors, on balance, weighed in favor of granting waiver to Kamine.
 
 
 16
 Finally, we reject Rochester's contention that FERC impermissibly relied on a regulation promulgated after Kamine requested its waiver. In Order 575, FERC changed the requirement that a qualifying facility meet the operating and efficiency requirements on a calendar year basis for the first year of operations, requiring instead that new facilities meet the requirements on a twelve month basis. See 18 C.F.R. § 292.205 (1996). However, in granting Kamine's waiver, FERC did not rely on Order 575:
 
 
 17
 '[M]any [qualifying facilities] have experienced difficulty meeting the standards during the first calendar year of operation. For example, if a cogeneration facility first produces electric energy late in the year, it may not have enough time under normal operation during the remainder of the calendar year to meet the Commission's operating and/or efficiency standards. Likewise, it may miss the peak thermal usage of its host(s), and so may be unable to comply with the Commission's operating and/or efficiency standards for that calendar year.' ... The reasons for changing our regulations support our grant of limited waiver to [Kamine].
 
 
 18
 73 F.E.R.C. at 61,809 n. 11 (citation omitted). As FERC's reasoning demonstrates, it merely indicated that the liberal waiver policy during the start-up and testing phase it applied to Kamine's request was motivated by the same factors that caused it to adopt Order 575. Hence, FERC relied on the reasoning underlying the new regulation, not the regulation itself.
 
 
 
 [1]
 16 U.S.C. § 824a-3
 
 
 [2]
 These factors include:
 the limited duration of the requested waiver; whether non-compliance was confined to the start-up and testing stage and whether further waivers would therefore be unnecessary; the timeliness of the submission of the waiver request; whether non-compliance was the result of an unexpected and one-time operational event outside the applicant's control; whether the request was intended to remedy specific problems associated with an innovative technology; the amount of opposition, if any; and whether granting waiver would fulfill PURPA's goal of encouraging cogeneration and the development of alternative generation technologies.
 Gordonsville Energy, L.P., 72 F.E.R.C. p 61,160 (1995), at 61,790-91.
 
 
 [3]
 In seeking rehearing, Rochester argued that FERC had misapplied its waiver standards. It challenged Kamine's status under 16 U.S.C. § 796(18)(A) & (B) as a qualifying cogeneration facility only in connection with its contention that Kamine was not entitled to a waiver. Although FERC did not argue in its brief on appeal that Rochester had waived the separate issue of Kamine's qualifying facility status, on rehearing FERC addressed only the challenge to its grant of the waiver. Under the circumstances, we are unpersuaded by Rochester's contention in its reply brief that on rehearing it also raised the entirely separate issue that Kamine was not a qualified cogeneration facility. See 16 U.S.C. § 8251(b); see also Platte River Whooping Crane Critical Habitat Maintenance Trust v. FERC, 876 F.2d 109, 112 (D.C.Cir.1989)